Priority Send ✓
Enter ✓
Closed
JS-5/JS-6
JS-2/JS-3
Scan Only




# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA-EASTERN DIVISION

RAYMOND HERNANDEZ, ) No. ED CV 04-00378 (SH)
       Plaintiff, ) MEMORANDUM OPINION
   v. ) AND ORDER
JOANNE B. BARNHART, )
Commissioner of Social Security, )
       Defendant. )

This matter is before the Court for review of the decision by the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income (SSI) under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.* Pursuant to 28 U.S.C. § 636(c), the parties have consented that the case may be handled by the undersigned. The action arises under 42 U.S.C. § 405(g), which authorizes the Court to enter judgment upon the pleadings and transcript of the record before the Commissioner. The plaintiff and the defendant have filed their pleadings, the defendant has filed the certified transcript of record, and the parties have filed a joint stipulation. After reviewing the matter, the Court concludes that the decision of the Commissioner should be affirmed.

THIS CONSTITUTES NOTICE OF ENTRY
AS REQUIRED BY FRCP, RULE 77(d).

On June 28, 2002, Raymond Hernandez filed an application for a period of disability alleging an inability to work since December 15, 1980 [AR 90-91], due to "heroin addiction, foot problems, right arm injury, headaches, and inability to read and write mainly due to the affects [sic] of drugs, and affective mood disorder." [AR 14] After various administrative procedures, an Administrative Law Judge (ALJ) determined that Plaintiff was not disabled within the meaning of the Social Security Act [AR 13-22], and Plaintiff makes five challenges to that determination.

Plaintiff asserts that the ALJ erred (1) in his application of the Medical-Vocational Guidelines [Grids] in his assessment of Plaintiff's residual functional capacity; (2) in disregarding the treating physicians' medical records and diagnoses; (3) in his assessment of the materiality of Plaintiff's substance abuse; (4) in his failure to assess the credibility of Plaintiff's sister; and (5) in failing to give a complete hypothetical to the Vocational Expert.

**ISSUE NO. 1:**

Plaintiff asserts that the ALJ erred in concluding that Plaintiff could perform heavy work. Defendant argues that Plaintiff's assertion is without merit. The Court agrees.

No treating, consulting, or examining physician opined that Plaintiff is unable to perform heavy work, [AR 147-226] and on August 6, 2002, examining doctor, Dr. Mallam, opined Plaintiff "should be able to lift or carry 100 pounds occasionally." [AR 163][1] Dr. Mallam's report constitutes substantial evidence upon which the ALJ properly relied. See Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995). In the alternative, assuming that Plaintiff could not perform unskilled, heavy work, Plaintiff remains capable of performing at least simple, unskilled work. [AR 19]

---

[1] In addition, at the September 8, 2003, hearing, the ALJ asked Plaintiff "[w]hen you worked construction [sic], did you do a lot of heavy work, 100 pounds or so?" to which Plaintiff responded "[w]e would do whatever, yeah." [AR 32]

**ISSUE NO. 2:**

Plaintiff asserts that the ALJ erred in rejecting the treating physicians' records and opinions. Defendant argues that the ALJ properly discussed and evaluated the medical evidence. The Court agrees.

A treating physician's opinion is entitled to greater weight than that of an examining physician. Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989), citing Sprague v. Bowen, 812 F.2d 1226, 1230 (9th Cir. 1987). A treating physician's opinion is given deference because he or she is employed to cure the claimant and has a greater chance to know and observe the claimant as an individual. Sprague, 812 F.2d at 1230.

However, Plaintiff had not seen a doctor for approximately thirty years prior to his June 28, 2002, application for SSI benefits. [AR 15, 34-35] It was not until this date of application that Plaintiff began seeing his psychiatrist, Dr. Brooks, [AR 37] and it was only two months later that Plaintiff was examined by Dr. Mallam and Dr. Rays at the request of the State Agency. [AR 154-63] Thus, whether Dr. Brooks is considered a "treating physician" who should be given greater deference than Dr. Mallam and Dr. Rays is debatable, for Dr. Brooks had only begun treating Plaintiff two months prior to Plaintiff's examination by Dr. Mallam and Dr. Rays.

Nevertheless, the Court will consider Dr. Brooks a "treating physician." The weight given a treating physician's opinion depends on whether it is supported by sufficient medical data and is consistent with other evidence in the records. 20 C.F.R. §§ 404.1527, 416.927 (2004). Dr. Brooks' June 20, 2003, records show Plaintiff had symptoms of depression and reclusive behavior, but that Plaintiff was significantly helped by Zoloft, Trazodine and Zyprexa. [AR 216-26] Dr. Brooks' records are

consistent with Plaintiff's sister's testimony [23-53, 217],[2] and Dr. Mallam's,[3] Dr. Rays',[4] Dr. Diamreyan's,[5] Dr. Rath's,[6] and Dr. Gregg's[7] medical data and records. [AR 147-226] Because Dr. Brooks's opinion is supported by sufficient medical data and consistent with other evidence in the records, the ALJ did not err because he did not disregard or reject

---

[2] See Issue No. 4 for discussion of Plaintiff's sister's testimony.

[3] On August 6, 2002, Dr. Mallam performed a consultative examination and reported that Plaintiff said he was depressed; However, most of Dr. Mallam's medical records and opinions were geared toward Plaintiff's physical complaints. [AR 160-63] The ALJ stated that he generally agreed with Dr. Mallam's opinions. [AR 16]

[4] On August 5, 2002, Dr. Rays, a clinical psychologist, performed a psychological evaluation and reported that Plaintiff's mood was depressed, that his stream of consciousness did not show peculiarities, that there was no bizarreness or confusion and that Plaintiff was not suicidal or homicidal. Dr. Rays opined Plaintiff as being able to carry out, understand and remember simple instructions, and that he would be able to work a normal, full-time job with appropriate breaks. Dr. Rays diagnosed Opioid dependence, in early remission, substance induced depressive disorder, malingering, below average mental ability, and antisocial personality disorder. Overall, Dr. Rays opined that Plaintiff seemed to be operating in the borderline range of intellectual functioning. Dr. Rays also stated Plaintiff would be able to work a normal full-time schedule with appropriate breaks. [AR 154-59] The ALJ gave Dr. Rays's report "considerable weight in light of the fact that [Dr. Rays] thoroughly reviewed [Plaintiff's] file as well as performed an extensive evaluation" of Plaintiff. [AR 17]

[5] From September 25, 2002, to September 29, 2002, Plaintiff was hospitalized for suicidal ideation and treated by Dr. Diamreyan. Dr. Diamreyan reported Plaintiff had been feeling depressed and that he had been given Remer and Zyprexa for "voices" that called his name. At the time of Plaintiff's discharge, Dr. Diamreyan reported that Plaintiff was feeling better and denied suicidal ideation or plan and that the "voices" had diminished. [AR 182-95]

[6] Dr. Rath, the medical expert, testified that a review of the evidence showed Plaintiff had a depressive disorder, that Plaintiff had been taking Zoloft and Trazodone and that he goes to drug counseling once a week. Dr. Rath noted that Plaintiff had improved significantly since taking Zoloft, six months after he began treatment in June 2002. [AR 147-226] The ALJ held that the regularity of medical care, the treatment modalities, and the diagnostic studies supported Dr. Rath's opinion and that there were "no clearly contrary findings from examining or treating sources." [AR 18]

[7] On November 2, 2002, Dr. Gregg performed the State agency psychiatric review technique on Plaintiff. Dr. Gregg reported that although Plaintiff had severe impairments, they were not expected to last for 12 consecutive months. With regard to the "B" criteria of the Psychiatric Review Technique Form, Dr. Rath opined Plaintiff had mild restrictions of activities in daily living; moderate activities in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and has had no episodes of decompensation. By September 2003, Dr. Gregg opined that Plaintiff was able to do simple repetitive tasks without public contact. [AR 202-15] The ALJ generally agreed with Dr. Gregg's State agency assessment and found Plaintiff retained the residual functional capacity for unskilled, heavy work. As such, the ALJ noted, Plaintiff remains capable of performing at least simple, unskilled work. [AR 19]

the treating physician's records and opinions.

**ISSUE NO. 3:**

Plaintiff asserts that the ALJ erred in finding that Plaintiff would not be disabled absent drug use. Defendant argues that the ALJ's discussion of the materiality of the Plaintiff's drug abuse is itself immaterial. The Court agrees.

If the ALJ determines, as he did here, that Plaintiff is not disabled, then the issue of the materiality of Plaintiff's substance abuse is irrelevant to a determination of disability. The materiality analysis is only required to implement the statutory mandate that disability payments not be made to claimants whose substance abuse was material to the determination of disability. See 42 U.S.C. § 423(d)(2)(C); Sousa v. Callahan, 143 F.3d 1240, 1245 (9th Cir. 1998).

**ISSUE NO. 4:**

Plaintiff asserts that the ALJ did not make the required credibility findings about the sister's testimony, as required, and failed to consider her third party questionnaire. Defendant argues that Plaintiff's assertion, if correct, is at most harmless error. See Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1197 (9th Cir. 2004) (harmless error rule). The Court agrees.

"Lay testimony as to a claimant's symptoms is competent evidence that an ALJ must take into account, unless he or she expressly determines to disregard such testimony and gives reasons germane to each witness for doing so." Lewis v. Apfel, 236 F.3d 503, 511 (9th Cir. 2001); Nguyen v. Chater, 100 F.2d 1462, 1467 (9th Cir. 1996) (citing Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993)). "One reason for which an ALJ may discount lay testimony is that it conflicts with medical evidence." Lewis, 236 F.3d at 511; Vincent v. Heckler, 739 F.2d 1393, 1395 (9th Cir. 1984).

However, the ALJ did not discount Plaintiff's sister's lay testimony. The ALJ explicitly states in his decision: "The claimant's sister testified the claimant has not been to a physician for thirty years. She also has difficulty motivating the claimant to go to the

hospital. . . . [H]is sister testified he has been 'clean' for 15 months. The claimant's sister stated the claimant is on Zoloft, sleeping pills, Trazadone, and sees a psychiatrist once a month." [AR 17] The ALJ also mentions in his decision that "[o]n May 9, 2003, the claimant's sister told Dr. Brooks that the claimant has improved tremendously." [Id.]

Plaintiff's sister's oral testimony and her written statements in the third party questionnaire established that she is Plaintiff's primary support system, and that Plaintiff has improved tremendously since seeking psychiatric treatment. [AR 23-53, 108-13, 126-32] Thus, the ALJ appropriately considered and adequately summarized Plaintiff's sister's statements in his analysis and conclusion.

**ISSUE NO. 5:**

Plaintiff asserts that the ALJ erred in failing to give a complete hypothetical to the Vocational Expert. Defendant argues that the ALJ properly concluded that Plaintiff could do other work. The Court agrees.

Hypothetical questions posed to the vocational expert must set out <u>all</u> the limitations and restrictions of claimant. <u>Embrey v. Bowen</u>, 849 F.2d 418, 422 (9th Cir. 1988) (emphasis in original). The hypothetical question must be accurate, detailed and supported by the medical record. <u>Gamer v. Sec. of Health & Human Servs.</u>, 815 F.2d 1275, 1279-80 (9th Cir. 1987). However, because the ALJ properly discounted Plaintiff's subjective assertions,[8] he did not need to pose hypothetical questions to the Vocational Expert which included those assertions. <u>See Magallanes</u>, 881 F.2d at 756-57. Thus, the ALJ did not err in failing to give a complete hypothetical to the Vocational Expert.

---

[8] Plaintiff does not challenge the ALJ's finding that Plaintiff's subjective complaints were not entirely credible.

Accordingly, the decision of the Commissioner is affirmed.

DATED: 2/12-01

_____
STEPHEN J. HILLMAN
UNITED STATES MAGISTRATE JUDGE